# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

**ROGER MITCHELL and**
**BILLIE ANN MITCHELL**                                   **PLAINTIFFS**

**V.**                                   **CIVIL ACTION NO. 1:10CV116-SA-JAD**

**STATE FARM FIRE AND CASUALTY CO.**                      **DEFENDANT**

## MEMORANDUM OPINION

Before the Court is Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment [17].  After reviewing the motion, responses, rules, and authorities, the Court finds as follows:

## FACTUAL BACKGROUND

A.  The Current Lawsuit

On January 14, 1997, Aberdeen Auto Sales was incorporated pursuant to the laws of the State of Mississippi.  The corporate documents list Tony L. Owens as the president of Aberdeen Auto Sales.  Plaintiff Billie Ann Mitchell is identified in the corporate documents as the treasurer and secretary of Aberdeen Auto Sales. It is undisputed that Plaintiff Billie Ann Mitchell, in her individual capacity and in her capacity as an officer for Aberdeen Auto Sales, executed a document entitled "Unconditional and Continuing Guaranty in favor of Automotive Finance Corporation."  On January 17, 2007, Automotive Finance Corporation instituted a suit against Aberdeen Auto Sales, Inc., Tony Owens, Billie Ann Mitchell, and Performance Auto Sales, LLC, seeking payment of all sums due and owing to Automotive Finance Corporations pursuant to the terms of a note executed by Aberdeen Auto Sales and

the unconditional and continuing guaranty executed by Billie Ann Mitchell and Tony Owens. On May 16, 2007, Tony Owens filed suit against Aberdeen Auto Sales and Billie Ann Mitchell, seeking dissolution of the corporate entity known as Aberdeen Auto Sales, and seeking an accounting against Billie Ann Mitchell for the assets of Aberdeen Auto Sales.

On or about June 28, 2007, both the Automotive Finance and the Owens lawsuits were presented for defense and indemnification to the Defendant by Plaintiffs' counsel. Defendant opened claims under a Homeowners policy of insurance ("HO") and a Personal Liability Umbrella policy of insurance ("PLUP") that it had issued to Roger Mitchell and Billie Ann Mitchell.[1] Defendant undertook an investigation concerning the two suits and determined that there was a question as to whether there was coverage available for the allegations made in the two suits against Billie Ann Mitchell. Thus, on July 17, 2007, Defendant issued its reservation of rights letter advising that it would provide a defense for Billie Ann Mitchell in both suits while it investigated whether coverage was available. Prior to presenting the two claims to Defendant, Billie Ann Mitchell had already retained counsel to represent her in both suits. As such, Defendant agreed to pay the fees of counsel already retained to represent Billie Ann Mitchell during the pendency of the coverage issues, rather than retaining additional panel counsel. On October 29, 2007, State Farm denied coverage pursuant to the HO and PLUP policies of insurance for the claims made in both the Automotive Finance and Owens lawsuits. Plaintiffs' counsel in the Automotive Finance suit submitted billing statements for his representation of Billie Ann Mitchell, and the Defendant paid his fees for such

---

[1] Defendant also insured Roger Mitchell and Billie Ann Mitchell pursuant to various automobile policies of insurance. However, those policies are not relevant to the present action, as the Plaintiffs have not brought suit against Defendant seeking coverage pursuant to those policies.

representation during the time the reservation of rights was in effect. It is undisputed that counsel for Plaintiffs in the Owens case failed to provide the requested bill statements and invoices to Defendant for the time the reservation of rights was in effect. It is also undisputed that, as a result, Defendant did not pay for such representation.

On March 25, 2010, Plaintiffs brought suit against Defendant for alleged breach of contract and bad faith stemming from Defendant's denial of coverage for claims made against Plaintiffs in the Automotive Finance and Owens lawsuits.[2]  Plaintiffs allege (1) that Defendant's denial of coverage was wrongful and without arguable basis, and (2) that the Defendant failed to adequately investigate the claims presented, entitling Plaintiffs to punitive and extra-contractual damages.

B.  Claims Made in the Automotive Finance and Owens Lawsuits

*Automotive Finance Lawsuit*

The claims in the Automotive Finance lawsuit stem from an alleged failure to pay monies to Automotive Finance pursuant to the guaranty entered by Billie Ann Mitchell. Count I of the Automotive Finance complaint is for breach of note and security agreement, and Count II is for breach of guaranty.  Plaintiffs assert that a duty to defend on the part of the Defendant exists due to the allegations in Count III.  The allegations in Count III of the lawsuit read as follows:

22. COUNT III
23. VICTIMS OF CRIME, DECEPTION AND FRAUD

---

[2]  Initially, Plaintiffs alleged that Defendant failed to provide a defense to an additional lawsuit, Western Surety v. Roger Mitchell, Billie Ann Mitchell, *et al*. The Court notes that all of the allegations related to the Western Surety lawsuit have been dismissed. See Agreed Order [16].

27. Paragraphs 2.6 and 4.0 of the Note provide that proceeds received from the disposition of motor vehicle(s) that were Purchase Money Inventory to AFC are held in trust for the benefit of AFC and shall be paid to AFC within 48 hours after the disposition (by sale or otherwise) of an item defined as Purchase Money Inventory.

28. Aberdeen, Owens, Mitchell and Performance misapplied the proceeds of the sale of motor vehicles, which were Purchase Money Inventory and which were held in trust by failing to make payment to AFC from said proceeds as provided in the Note. The specific vehicles sold out of trust are identified on AFC's Write OFF Detail Report, attached hereto as Exhibit 4.

29. By misapplying entrusted property and property of a credit institution in a manner that Aberdeen, Owens, Mitchell and Performance knew was unlawful and knew involved substantial risk of loss or detriment to AFC, Aberdeen, Owens, Mitchell and Performance committed criminal deception as that term is defined by Ind. Code § 35-43-5-3.

30. By transferring the proceeds of the sales in derogation of the Note with intent to defraud AFC, Aberdeen, Owens, Mitchell and Performance committed criminal fraud as that term is defined by Ind. Code. § 35-43-5-4.
***
32. AFC has suffered a pecuniary loss as a result of the violations of Ind. Code § 35-43-5-4 by Aberdeen, Owens, Mitchell and Performance. Pursuant to Ind. Code § 34-24-3-1, AFC is entitled to recover from Aberdeen, Owens, Mitchell and Performance three (3) times AFC's actual damages from such violations, which is $307, 388.10, together with attorneys' fees, interest, and other costs of collection set out therein.
***

Count III basically alleges that Billie Ann Mitchell misapplied proceeds, sold vehicles out of trust, misapplied entrusted property and property of a credit institution, and transferred proceeds of the sales in derogation with the intent to defraud.

*Owens Lawsuit*

The claims in the Owens suit seek dissolution of the corporate entity known as Aberdeen Auto Sales and an accounting of its assets from Billie Ann Mitchell. The relevant portions of the Owens complaint read as follows:

10.

Plaintiff has requested an accounting from his co-shareholder, Defendant herein and has not received it nor has he been advised of the location of corporation property or the receivables that have been collected by her in his absence.

11.

Plaintiff has attempted to locate property of Aberdeen Auto Sales, Inc. and has discovered property previously belonging to the Corporation that was allegedly sold or transferred to them by the husband of Director, Billy Ann Mitchell.[3]

CLAIM FOR RELIEF

12.

A.) The Directors are deadlocked in the management of the corporate affairs and are unable to break the deadlock. . . .

B.) The Director in control of the corporation has acted and is acting and will continue to act in a manner that is illegal, oppressive and fraudulent.

C.) The corporate assets are being misapplied or wasted.

D.) Corporation assets have been sold and not applied to current obligations of the corporation.

E.) That the assets of the Corporation have been used to pay debts that were personally guaranteed by the stockholders to the detriment of others holding

---

[3] Plaintiff Billie Ann Mitchell is referred to in the Owens lawsuit as "Billy Ann Mitchell."

legitimate claims against the Corporation that were not personal liabilities of the stockholders as well.

The Owens lawsuit, as it relates to Plaintiff Billie Ann Mitchell, raises allegations of fraud, waste, misrepresentation, and misappropriation of funds.

C. The Insurance Policies

The insuring agreement of the HO policy provides:

**SECTION IILIABILITY COVERAGES**
**COVERAGE L – PERSONAL LIABILITY**

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence,** we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

Thus, the HO policy provides insurance for "bodily injury" and "property damage" that is caused by an "occurrence" that takes place during the policy period, and for which coverage is not otherwise excluded. The HO policy defines the term "occurrence" as

7. **"occurrence"**, when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a. **bodily injury;** or

b. **property damage;** during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence.**

The insuring agreement of the PLUP, C-1 provides:

**COVERAGES**

1.     **COVERAGE L PERSONAL LIABILITY**

If you are legally obligated to pay damages for a **loss,** we will pay your **net loss** minus the **retained limit**. Our payment will not exceed the amount shown on the **Declarations** as Policy Limits- Coverage L- Personal Liability.

2.     **Defense and Settlement.**

    a.     We may investigate, negotiate and settle a claim or suit covered by this policy.

    b.     When the claim or suit is covered by this policy, but not covered by any other policy available to you: (1) we will defend the suit against you;

The insuring agreement of the PLUP, C-2 provides:

**COVERAGES**

**COVERAGE L – PERSONAL LIABILITY**

If a claim is made or suit is brought against an **insured** for damages because of a **loss** for which the **insured** is legally liable and to which this policy applies, **we** will pay on behalf of the **insured**, the damages that exceed the **retained limit**. The most **we** will pay for such **loss** is the Coverage L Limit of Liability, as shown on the declarations page, regardless of the number of **insureds** who may be liable, claims made, or persons injured.

The PLUP, C-1 provides:

    \*\*\*

6.     "**loss**" means:

    a.  an accident, including injurious exposure to conditions, which results in **bodily injury** or **property damage** during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **loss;** or

      b.  the commission of an offense, or series of similar or related offenses, which result in **personal injury** during the policy period.

The PLUP, C-2 provides defines the term "loss" as:

            \*\*\*

    7.    **"loss"** means:

      a.    an accident, including accidental exposure to conditions, which first results in **bodily injury** or **property damage** during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **loss,** or

      b.    the commission of an offense which first results in **personal injury** during the policy period. A series of similar or related offenses is considered to be one **loss.**

Thus, in order to fall within the insuring language of the PLUP, the underlying suits must make some allegation of a "loss" defined as "bodily injury" or "property damage" caused by an "accident" or "personal injury" caused by an offense.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

**ANALYSIS AND DISCUSSION**

"'In any suit for a breach of contract, the plaintiff has the burden of proving by a preponderance of the evidence: (i) the existence of a valid and binding contract; and (ii) that the defendant has broken, or breached it; and (iii) that he has been thereby damaged monetarily.'" Clifton v. Nationwide Gen. Ins. Co., 2010 WL 3274507, at *3 (S.D. Miss. Aug. 17, 2010) (citing Warwick v. Matheney, 603 So. 2d 330, 336 (Miss. 1992)). In this case, the Plaintiffs' breach of contract claim is two-fold. That is, Plaintiffs allege that Defendant

breached their contract of insurance by (1) failing to defend and indemnify them for the claims made in the Automotive Finance and Owens lawsuits, and (2) failing to adequately investigate the claims. Before the Court considers each allegation, the Court first discusses Defendant's summary judgment motion as it relates to Plaintiff Roger Mitchell.

A. Claims Made by Roger Mitchell

Plaintiffs' Complaint alleges that the underlying lawsuits were brought against both Roger Mitchell and Billie Ann Mitchell.  However, both the Automotive Finance and Owens lawsuits only name Billie Ann Mitchell as a defendant. Defendant State Farm's obligation to defend its insured only applies to those instances where a claim is made or suit is filed against an insured that is otherwise covered.  Given that there were no claims made in the two suits against Roger Mitchell, the Defendant could not have breached any duty to Roger Mitchell under either the HO or PLUP policies. For this reason, the Plaintiffs concede in their response brief that summary judgment should be granted as to Roger Mitchell.  Accordingly, Defendant's Motion for Summary is granted as to all claims concerning Roger Mitchell.

B. Duty to Defend Claims Against Billie Ann Mitchell

An insurer "has an absolute duty to defend a complaint which contains allegations covered by the language of the policy, but it has absolutely no duty to defend those claims which fall outside the coverage of the policy." Farmland Mut. Ins. Co. v. Scruggs, 886 So. 2d 714, 719 (Miss. 2004) (citations omitted). "Only if the pleadings state facts which bring the injury within the coverage of the policy is the insured required to defend." Shelter Mut. Ins. Co. v. Brown, 345 F. Supp. 2d 645, 648-49 (S.D. Miss. 2004) (citing Mulberry Square Productions, Inc. v. State Farm Fire & Cas. Co., 101 F.3d 414, 421 (5th Cir. 1996)).

Therefore, in determining whether the insurer has a duty to defend the insured, the Court must "look to the allegations in the underlying state court complaints." <u>Am. Guar. & Liab. Ins. Co. v. The 1906 Co.</u>, 273 F.3d 605, 610 (5th Cir. 2001) (applying Mississippi law). "The insurer has a duty to defend when there is any basis for potential liability under the policy." <u>Cullop v. Sphere Drake Ins. Co.</u>, 129 F. Supp. 2d 981, 982 (S.D. Miss. 2001) (citations omitted).

As noted above, the Automotive Finance lawsuit stems from an alleged failure to pay monies to Automotive Finance pursuant to the guaranty entered by Billie Ann Mitchell. Count III of the lawsuit, the only count relevant to this proceeding, alleges that Billie Ann Mitchell misapplied proceeds, sold vehicles out of trust, misapplied entrusted property, and transferred proceeds with an intent to defraud. The claims in the Owens suit seek dissolution of the corporate entity known as Aberdeen Auto Sales and an accounting of its assets from Billie Ann Mitchell. As it relates to Plaintiff Billie Ann Mitchell, the Owens suit raises allegations of fraud, waste, misrepresentation, and misappropriation of funds.

It appears undisputed that the HO policy provides insurance for "bodily injury" and "property damage" that is caused by an "occurrence" that takes place during the policy period, and for which coverage is not otherwise excluded. It also appears to be undisputed that in order to fall within the insuring language of the PLUP the underlying suits must make some allegation of a "loss" defined as "bodily injury" or "property damage" caused by an "accident" or "personal injury" caused by an offense. The Plaintiffs appear to concede that neither the Automotive Finance lawsuit nor the Owens lawsuit contain allegations of "bodily injury" or some other "personal injury" as defined in the insurance policies. Instead, the

Plaintiffs' entire argument in this case hinges on the meaning of the term "property damage."

The HO and PLUP policies define property damage as:

**HO (2006-2007 and 2007-2008 policy periods):**

> 8. **"property damage"** means physical damage to or destruction of tangible property, *including loss of use of this property.* Theft or conversion of property by any insured is not property damage.

**PLUP, C-1 (2006-2007 policy period):**

> 11. **"property damage"** means physical injury to or destruction of tangible property. This *includes the loss of use* caused by the injury or destruction.

**PLUP, C-2 (2007-2008 policy period):**

> 10. **"property damage"** means physical damage to or destruction of tangible property *including the loss of such property.* Tangible property does not include computer programs or data or the reconstruction of computer programs or data. Theft or conversion of property by an insured is not property damage.

Specifically, Plaintiffs confine their discussion of property damage to the above-italicized portion of the definitions. Plaintiffs assert that the allegations in Automotive Finance and Owens are in fact claims of property damage because there are allegations that Billie Ann Mitchell fraudulently sold property out of trust and wasted assets. According to Plaintiffs, these allegations raise "loss of use" issues because (1) Automotive Finance could not initially repossess the vehicles that served as collateral under the security agreement and guaranty and (2) because the assets wasted in the Owens suit is loss of use of those assets. Plaintiffs never allege that there has been "physical damage" or "destruction of tangible property" in this case, instead asserting that the definition of property damage in the insurance policies provides coverage for loss of use even if no physical damage or destruction has occurred. Defendant,

on the other hand, contends that such a reading of the policies is flawed. Given this dispute between the parties, the question before the Court concerns the proper interpretation of "property damage" as it is defined in the policies.

> Mississippi law provides a familiar standard for interpreting insurance policies:

> [I]f a contract is clear and unambiguous, then it must be interpreted as written. A policy must be considered as a whole, with all relevant clauses together. If a contract contains ambiguous or unclear language, then ambiguities must be resolved in favor of the non-drafting party. Ambiguities exist when a policy can be logically interpreted in two or more ways, where one logical interpretation provides for coverage. However, ambiguities do not exist simply because two parties disagree over the interpretation of a policy. Exclusions and limitations on coverage are also construed in favor of the insured. Language in exclusionary clauses must be clear and unmistakable, as those clauses are strictly interpreted. Nevertheless, a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured.

U.S. Fid. & Guar. Co. of Miss. v. Martin, 998 So. 2d 956, 963 (Miss. 2008) (citations and quotation marks omitted). Neither side actually contends that the insurance policies at issue here are ambiguous; however, as noted, both sides appear to advance contrary interpretations of the "property damage" language.

The Court begins by noting that several courts have addressed the issue of whether insurance policy language similar to the language in this case allows for loss of use damages that are unaccompanied by physical damage. The Plaintiffs, despite the fact that they fail to actually cite to *any* authority, appear to rely on a rationale similar to the one found in American Home Assurance Co. v. Libbey-Owens-Ford Co., 786 F.2d 22 (1st Cir. 1986) and Gibson v. Farm Family Mutual Insurance Co., 673 A.2d 1350 (Me. 1996).

In American Home Assurance Co., "property damage" was defined in the policy at issue as "'physical injury to, or physical destruction of, tangible property, including loss of use thereof.'" 786 F.2d at 24. In that case, the court of appeals first noted that the 1973 revision of the comprehensive general liability policy (CGL), used by most insurance companies, added the modifier "'physical'" injury to the definition of "'property damage'" in order to restrict recovery for intangible losses. Therefore, under this policy language, some physical injury to tangible property must be shown to trigger coverage. Id. at 25.

The court agreed with the district court's finding that the policy did not require tangible property to suffer physical injury in order for a loss of use claim to be covered, stating as follows:

> Because the American Home policy explicitly defined property damage as 'physical injury' to tangible property, and because none of Hancock's claims entailed or resulted from physical damage to the Hancock Building, the district court concluded that none of Hancock's claims for consequential damages resulting from the breakage of [the defendant's] windows were covered under the policy. The court did find coverage for the loss of use claim because the policy defined property damage as 'physical injury to . . .tangible property, *including the loss of use thereof*' (emphasis added). The court noted that, although the word 'including' could suggest that loss of use must be traced to some physical injury, it was more reasonable to view the additional phrase 'loss of use thereof' as including any 'loss of use of tangible property', independent of physical injury to that property. The court also noted that the American Home policy was significantly different from other polices that explicitly cover only 'physical injury to tangible property . . . including loss of use thereof *resulting therefrom*' (emphasis added).

Id. at 25.

In Gibson, the policy defined "property damage" as "physical injury to or destruction of tangible property, including the loss of use of this property." Gibson, 673 A.2d at 1353. Interpreting the language of the policy against the insurer, the court concluded that the policy

included loss of use of tangible property with no accompanying physical injury to that property. Gibson, 673 A.2d at 1353.

In contrast to these two cases, the majority of courts directly addressing the issue have interpreted the same policy language that exists in this case to require physical damage or destruction of tangible property before there is coverage for loss of use. See, e.g., Mutlu v. State Farm Fire and Cas. Co., 337 Ill. App. 3d 420, 428-31, 785 N.E.2d 951 (2003); Continental Ins. Co. v. Bones, 596 N.W.2d 552 (Iowa 1999); Coulter v. CIGNA Property & Casualty Cos., 934 F. Supp. 1101 (N.D. Iowa 1996); Ehlers v. Johnson, 164 Wis.2d 560, 476 N.W.2d 291 (App.1991); Dixon v. National American Insurance Co., 411 N.W.2d 32 (Minn. App. 1987); see also 43 AM. JUR. 2D INSURANCE § 705 ("Under a clause providing coverage for "loss of the use of the property," the loss-of-use damages must arise from physical damage to or the destruction of tangible property."); ALLAN D. WINDT, 3 INSURANCE CLAIMS & DISPUTES 5TH § 11:1, n.2 (same). In Dixon, the policy at issue defined "property damage" as "physical injury to or destruction of tangible property, including loss of use of this property." 411 N.W.2d at 33. The court held that buyers' claims against the sellers-insureds, that a septic system was inadequate and outside the property's boundary lines, did not constitute property damage. The court noted that there were no allegations that the property was injured or damaged in any way – the only damage being to the buyers and their interest in the property. Id. at 33-34.

In Ehlers v. Johnson, the insurance company refused to defend its insureds against a suit alleging that they had misrepresented the lot lines in a real estate transaction. The policy in that case defined property damage to mean "physical injury to or destruction of tangible

property, including loss of use of this property." <u>Ehlers</u>, 164 Wis.2d at 562, 476 N.W.2d at 292. The court rejected the insureds' argument that no physical injury to the property was required in order to trigger coverage. The court reasoned as follows:

> The loss of use clause is introduced by the verb 'including.' The dictionary defines 'including' as 'to take in or comprise as part of a whole . . .,' The loss of use clause is thus introduced as a subset of 'physical injury to or physical destruction of tangible property.' If the loss of use clause were interpreted as the [insureds] would have it, i.e., as any nonphysical injury to tangible property, the definition of property damage would effectively read: 'physical injury to . . . tangible property, including non-physical injury.' We reject such a contradictory reading.

<u>Id.</u> at 564, 476 N.W.2d at 293.

In <u>Coulter</u>, the policy at issue defined "property damage" as "'physical damage or destruction to tangible property, including the loss of the use of that property.'" 934 F. Supp. at 1118. Because the Iowa courts had not directly addressed whether such policy language required that the tangible property be physically damaged or destroyed for there to be coverage for loss of its use, the district court reviewed cases from other jurisdictions. The <u>Coulter</u> court noted that the definitions in both <u>Ehlers</u> and <u>Dixon</u> were virtually identical to the definition of "property damage" in the policy before it, and the court ultimately followed the rationale in those cases.

However, the <u>Coulter</u> court also discussed <u>American Home Assurance Co.</u> in some detail. The <u>Coulter</u> court first questioned the <u>American Home Assurance Co.</u> court's reliance on the 1973 revision of the CGL policy. The Coulter court noted that the 1973 revision defined "property damage" as either "(1) 'physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom;' or (2) 'loss of use of tangible property which has not been physically

injured or destroyed provided such loss of use is caused by an occurrence during the policy period.'" Id. at 1120. After further noting that American Home Assurance Co. cited the revision but advocated an exception to the language requiring a physical injury or damage to accompany the loss of use damages, the Coulter court stated as follows:

> The court, however, fails to see how the 1973 revision lends itself to an interpretation that loss of use damages unaccompanied by physical damage or injury are covered as 'property damage,' where the second prong of the CGL definition is not given as an alternative to the first prong. Clearly, the second prong was added in 1973 to cover loss of use damages to tangible property that are unaccompanied by physical damage or destruction. Thus, because the drafters found a second prong was necessary for loss of use damages unaccompanied by physical damage, the first prong defining property damage as 'physical injury to or destruction of tangible property . . . , including loss of use thereof at any time resulting therefrom' must require loss of use damages to be accompanied by physical injury or destruction.

Id. at 1121.

The policy in Coulter resembled the first prong of the CGL definition and did not provide the alternative definition for loss of use damages unaccompanied by physical damage. The Coulter court concluded that the decisions in Ehlers and Dixon advocated a more logical approach to analyzing the issue. Construing the language as a whole and giving the words their ordinary meaning, the court determined that the policy's definition of "property damage" was *not* susceptible to two interpretations, and held that there was no coverage because there were no allegations that the loss of use of tangible property was accompanied by physical damage or destruction. Id. at 1122.

Similarly, in Continental Insurance Co. v. Bones, 596 N.W.2d 552 (Iowa 1999), the insureds were sued for their refusal to honor a guarantee, which had resulted in the eviction of a tenant. The insurance policy at issue defined property damage as "'physical injury to or

destruction of real property or tangible personal property including loss of use of the property.'" <u>Id.</u> at 556. The insureds claimed that the tenant's eviction from the premises resulted in his loss of use of the real estate, and therefore, there was an allegation of property damage for which the policy provided coverage.

Noting that this was a case of first impression, the Iowa Supreme Court reviewed prior decisions from other jurisdictions, including <u>Coulter</u>, <u>Gibson</u>, <u>Ehlers</u>, and <u>American Home Assurance Co.</u> The court first rejected the reasoning in <u>Gibson</u>, stating as follows:

> The Maine court's analysis was very abbreviated; without any discussion of the policy language, the court merely cited as support for its holding the general principle that policies of insurance are interpreted '"most strongly' against the insurer." Unless there are two reasonable meanings from which to choose, however, the rule that a contract must be construed against the party who drafted it does not come into play. The Maine court failed to explain why the interpretation it adopted was a reasonable meaning based upon the language of the policy.

<u>Id.</u> at 558. The <u>Bones</u> court next criticized the decision in <u>American Home Assurance Co.</u> for that court's reliance on the differences in the language of the standard insurance form and the abbreviated form used in that case. The <u>Bones</u> court pointed out that the difference gave rise to a contrary, reasonable interpretation. The court concluded that the alternative interpretation was neither reasonable nor consistent with the policy language. Thus, in accord with <u>Ehlers</u>, the <u>Bones</u> court concluded that damages for loss of use of tangible property were covered by the policy in that case only if the property had been physically injured or destroyed.

In this case, the Court agrees with the majority of courts that have addressed the issue and finds that the definitions of property damage in both the HO and PLUP insurance policies require physical damage or destruction of tangible property. Stated differently, the Court concludes that there can be no coverage for the loss of use of tangible property

unaccompanied by physical damage or destruction.  The HO policy and the PLUP, C-2 policy provide almost identical definitions of property damage: "property damage means physical damage to or destruction of tangible property, including loss of use of this/such property."[4] The word "including" is defined as follows: "to take in or comprise as part of a whole." MERRIAM'S WEBSTER'S COLLEGIATE DICTIONARY 588.  Thus, the clause, "including the loss of use" is a subset of the clause "physical damage or destruction of tangible property." Further, the prepositional phrases – "of that property" and "of such property" – undoubtedly refer to "tangible property."  Yet, to conclude that such phrases refer to tangible property, independent of the physical damage or destruction language, ignores the fact that "to tangible property" is also a prepositional phrase that modifies the subject of that first clause, "physical damage or destruction to tangible property," and neglects the significance of the word "including." The word "including" essentially links the two clauses.  If the second clause of the definition was intended to create a separate class of coverage that did not require physical damage or destruction to tangible property, the word "or" would be substituted in the place of the word "including."  That is, the definition would read: "property damage means physical injury to or destruction of tangible property *or* the loss of use of this/such property."  The definition, however, does not read this way.

The policies in this case also do not provide an alternative definition for loss of use damages unaccompanied by physical damage. That is, some insurance policies, including the 1973 revision of the CGL, contain a definition similar to the one in this case *and* an

_____

[4] The PLUP, C-1 provides a slightly different definition of property damage: "property damage means physical injury to or destruction of tangible property. This includes the loss of use caused by the injury or destruction." This definition is even more specific as to the requirement that there be some physical injury or damage to tangible property.

alternative definition that defines property damage as loss of use of tangible property that is *not* physically destructed or damaged. See, e.g., Architex Assn. Inc. v. Scottsdale Ins. Co., 27 So. 3d 1148 (Miss. 2010) (providing an example of such a policy); Selective Ins. Co. of Southeast v. J.B. Mouton & Sons, Inc., 954 F.2d 1075, 1077-78 (5th Cir. 1992) (same). Here, an alternative definition was *excluded* from this policy.

Furthermore, the Fifth Circuit's decision in Selective Insurance supports the Court's reading of the policy in this case and illustrates the differences between policies that have alternative definitions of "loss of use." In Selective Insurance, the underlying complaint alleged that the defendants committed various wrongs resulting in the loss of land and future income from the operation or sale of partnership property. Id. at 1077. It was alleged that the complaint asserted allegations of loss of land and loss of income, and that this qualified as property damage under the applicable insurance policy. Id. The definition of property damage in the Selective Insurance policy was as follows:

> (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, *or* (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

Id. (emphasis added). The court analyzed each definition of property damage separately. The court started with the first definition – a definition that is similar to the one at issue in this case. The court reasoned as follows:

> The [ ] complaint indeed describes wrongful conduct by the defendants resulting in the initial transfer of their land to the partnership (¶¶ 13, 27, 30, 32), in the allegations that defendants intentionally or recklessly made false and misleading statements and omitted material facts (¶¶ 25-27, 29, 38, 42, 70), and aided and abetted each other in a scheme to sell the investment (¶¶ 30, 32-33, 45) and to defraud plaintiffs (¶ 76).

> This loss does not fall within the first type of covered property damage, however, for two reasons. First, Mouton has not suggested how a transfer of the land can constitute *a "physical injury to or destruction of" the land . . . .*

Id. at 1078 (emphasis added). The court noted that the second, alternative definition – as opposed to the first one – is the definition one would use for loss of use when the property is *not* physically injured or destroyed. Id. at 1078 n.2; see also Siciliano v. Hudson, 1996 WL 407562, at *8 (N.D. Miss. April 3, 1996) (failure to show physical damage prohibited a finding of property damage in an insurance policy that defined property damage as "physical injury to or destruction of tangible property, including loss of use of this property"). In this case, as noted, the policies at issue are void of such an alternative definition.

After an examination of the definition of "property damage" as defined in the HO and PLUP policies, the Court here determines that such definitions are not susceptible to more than one *reasonable* interpretation. In the absence of any ambiguity and affording the words their plain, ordinary meaning, the Court concludes that there can be no coverage for the loss of use of tangible property unaccompanied by physical damage or destruction. The claims in both Owens and Automotive Finance are only pecuniary in nature, with allegations of breach of contract and fraud/misrepresentation in Automotive Finance, and accounting and dissolution in Owens. Billie Ann Mitchell even conceded in her deposition testimony that she only alleges claims coverage related to the "loss of use" *of monies* allegedly sustained by both Tony Owens and Automotive Finance:

> ***

> Q:        So they didn't allege in the Automotive Finance complaint that you, for instance, took a baseball bat and beat in a windshield or

> knocked out a headlight or anything like that. You didn't cause any physical damage to the cars.

A:     No, ma'am.

Q:     *They just claimed that they didn't get their money from you, correct?*

A:     *Yes, ma'am.*

Q:     Mrs. Mitchell, did you physically harm any vehicles?

A:     No, ma'am.

Q:     Did you physically harm any property that was owned by Aberdeen Auto Sales?

A:     No, ma'am.

Q:     Did you physically harm any property that was owned by Automotive Finance Corporation?

A:     No, ma'am.

***

Q:     Okay. Mrs. Mitchell, if you'll take a look at the Owens—Tony Owens versus Aberdeen Auto Sales complaint. Would you please explain to me what claims in the Tony Owens versus Aberdeen Auto Sales complaint you contend should be covered by State Farm.

A:     I was accused of misusing assets or wasting assets, misapplied or wasted assets. Individually.

As the Defendant aptly pointed out, under Mississippi law, such economic and monetary loss does not qualify as a physical injury. <u>See</u> <u>Rogers v. Allstate Ins. Co.</u>, 938 So. 2d 871 (Miss. Ct. App. 2006) (holding that claims of financial loss and damages for loss of reputation do not amount to "physical injury to or destruction of tangible property"); <u>Audobon Ins. Co. v. Stefancik</u>, 98 F. Supp. 2d 751, 756 (S.D. Miss. 1999) (holding that financial losses and

tangible injuries to reputation are not injuries to tangible property); <u>Shelter Mut. Ins. Co. v. Brown</u>, 2004 WL 2651249 (S.D. Miss. 2004) (damages suffered by purchaser of house arising out of deficient foundation of home were pecuniary in nature and did not constitute 'property damage'). Similarly, the claims for fraud and deception (misrepresentation) do not constitute claims for "property damage" under Mississippi law as they are economic and contractual in nature. <u>See</u> <u>Mendrop v. Shelter Mut. Ins. Co.</u>, 2007 WL 4200827, at *4 (N.D. Miss. Nov. 26, 2007). Accordingly, because there has been no claim of physical damage or destruction of tangible property, the definition of property damage has not been met. Given this, there is no coverage for the claims asserted against Plaintiffs and thus no duty to defend. Defendant's Motion is, for this reason, granted.

However, the Court notes that, even if it did conclude there was some allegation of property damage in the underlying suits, Plaintiffs' claims would still fail. According to Plaintiffs, once a claim for "property damage" has been asserted, this triggers Section II – Additional Coverages of the HO policy. Section II – Additional Coverages provides, in relevant part, as follows:

> \*\*\*
>
> **3.  Damage to Property of Others**
>
> > a.  We will pay for property damage to property of others caused by an insured.
> >
> > b.  We will not pay more than the smallest of the following amounts:
> >
> > > (1)  replacement cost at the time of loss;
> > > (2)  full cost of repair;
> > > (3)  $500 in any one occurrence
> >
> > c.  We will not pay for property damage

(1)      if insurance is otherwise provided in this policy

(2)      caused *intentionally* by an insured who is 13 years of age or older

(3)      to property, other than a rented golf case, owned by or rented to an insured, a tenant of an insured, or a resident of your household, or

(4)      arising out of

      (a)    business pursuits

Section II – Additional Coverages does not apply to property damage that is "intentionally" caused by the insured. All of the allegations in the Owens and Automotive Finance lawsuits are intentional acts (i.e., fraud, misappropriation, waste, criminal deception).  Thus, even if the Plaintiffs could trigger Section II – Additional Coverages by alleging some form of property damage, Plaintiffs have still failed to demonstrate how Section II would apply.

Along the same lines, a reading of the complete definition of "property damage" in the HO and PLUP policies sheds light on some additional exclusions that, according to Plaintiffs' own characterization of the case, would likely also exclude coverage. The HO and PLUP policies both explicitly state that "conversion" and "theft" do not constitute "property damage."  By Plaintiffs' own argument, this exclusion would apply.  That is, Plaintiffs attempt to establish "loss of use" in their brief by saying that the vehicles at Aberdeen Auto Sales were improperly sold, hidden, or not properly accounted. Such allegations made by Plaintiffs, while not technically labeled as so, are akin to allegations of theft and conversion. Thus, even if the Court concluded that an allegation of "property damage" existed, additional exclusions under the policies of insurance would still exclude coverage in this case.

C.  Duty to Investigate

Mississippi places a duty on insurers to properly investigate the claims of their policyholders. See Pilate v. Amer. Federated Ins. Co., 865 So. 2d 387, 395 (Miss. Ct. App. 2004); Life & Cas. Ins. Co. of Tennessee v. Bristow, 529 So. 2d 620 (Miss. 1988); see also McLendon v. Wal-Mart Stores, Inc., 521 F. Supp. 2d 561 (S.D. Miss. 2007) (Duty to investigate workers compensation claim requires procurement of all relevant medical information. No bad faith where insurer is actively investigating claim pursuant to that duty); Washington v. Am. Heritage Life Ins. Co., 500 F. Supp. 2d 610 (N.D. Miss. 2007) (Mississippi law imposes on insurer a duty to investigate claims and claimant has a duty to cooperate in that investigation. An insurer who is actively investigating a claim is not liable for bad faith for doing so.); Eichenseer v. Reserve Life Ins. Co., 682 F. Supp. 1355, 1366 (N.D. Miss. 1988), aff'd, 881 F.2d 1355 (5th Cir. 1989), cert. granted, judgment vacated on other grounds by 499 U.S. 914, 111 S. Ct. 1298, 113 L. Ed. 2d 233 (1991) ("Mississippi imposes a clear duty upon an insurance company to promptly and adequately investigate an insured's claim before denying it."). "An adjuster has a duty to investigate all relevant information and must make a realistic evaluation of a claim." Dunn v. State Farm Fire & Cas. Co., 711 F. Supp. 1359, 1360 (N.D. Miss. 1987).

Here, while Plaintiffs contend that Defendant did not adequately investigate the claims made in the Automotive Finance and Owens lawsuits, they provide absolutely no evidence or support for such an assertion. The Defendant here in fact actively conducted an investigation into the coverage issues. The Defendant took the allegations in the complaint, as well as additional facts known, and compared such allegations and facts to the policy language. The

Defendant also sent Plaintiffs a follow-up letter, informing Plaintiffs of Defendant's investigation and reasoning as to why there was no coverage available for the lawsuits. The Plaintiffs have not produced any evidence concerning how the Defendant failed to adequately investigate or what else the Defendant should have done. Further, the Court has already concluded that the two underlying suits here are not the type for which coverage is provided in the HO and PLUP insurance policies. Given this, there is no amount of additional investigation that would have led Defendant to believe there was indeed coverage available. For this reason, Defendant's Motion is granted as to Plaintiffs' failure to investigate claim.

D.  Punitive Damages

Plaintiffs also bring a claim for punitive damages. Mississippi law recognizes a claim of bad faith refusal of insurance coverage, and a corresponding chance to recover punitive damages, if a plaintiff can prove that (1) there was no arguable or legitimate reason to deny coverage and (2) the insurer acted willfully, maliciously, or with gross and reckless disregard for the insured's rights. Liberty Mut. Ins. Co. v. McKneely, 862 So. 2d 530, 533 (Miss. 2003). Simply showing there is no arguable reason to deny coverage is insufficient to place a punitive damages claim before the jury. Murphree v. Fed. Ins. Co., 707 So.2d 523, 530 (Miss. 1997).

The award of punitive damages under Mississippi law requires a plaintiff to prove "by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton, or reckless disregard for the safety of others, or committed actual fraud." MISS. CODE ANN. § 11-1-65 (1972). Punitive damages are recoverable in a breach of contract case only "where the breach

results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an independent tort." Caldwell v. Alfa Ins. Co., 686 So. 2d 1092, 1095 (Miss. 1996). If the insurer had an arguable reason to deny coverage, punitive damages are impermissible. Pioneer Life Ins. Co. of Ill. v. Moss, 513 So. 2d 927, 929 (Miss. 1987). The Mississippi Supreme Court has defined an "arguable reason" as "nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to the heightened level of an independent tort." Caldwell, 686 So. 2d at 1096.

Here, not only does nothing in the summary judgment record suggest a cognizable right by Plaintiffs to punitive damages against Defendant, but the Court has already determined (1) that Defendant did not have a duty to defend, and (2) that Defendant did not fail to investigate the claims in the underlying lawsuits. There is no independent cause of action for punitive damages in Mississippi. In other words,

> In order to recover punitive damages against an insurance company for bad-faith refusal to pay a claim, or refusal to honor an obligation under an insurance policy, the insured must first demonstrate that the claim or obligation was in fact owed . . . . Second, the insured must demonstrate that the insurer has no arguable reason to refuse to pay the claim or to perform its contractual obligation. Finally, in order to recover punitive damages from the insurer for bad faith, the insured must demonstrate that the insurer's breach of the insurance contract "results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an intentional tort."

Essinger v. Liberty Mut. Fire Ins. Co., 529 F.3d 264, 271 (5th Cir. 2008) (citing JACKSON, MISSISSIPPI INSURANCE LAW § 13:2) (quoting Caldwell v. Alfa Ins. Co., 686 So. 2d 1092, 1095 (Miss.1996)). Given that the Plaintiffs have not demonstrated that a claim or obligation was in fact owed, punitive damages are not available, and Defendant is entitled to summary judgment as to this claim.

E.  Extra-contractual Claims

Mississippi caselaw provides for "extra-contractual damages" when an insurance company has tortiously breached its contract. <u>Essinger</u>, 529 F.3d at 270. This is because an insurance company's financial default is often less than the cost to the insured of judicially forcing a correct payment. When an insurance company breaches its contract with an insured but does not do so in a way that is so egregious as to permit the recovery of punitive damages, the insured in some circumstances will have a right to attorneys' fees and other expenses that were reasonably foreseeable. <u>Univ. Life Ins. Co. v. Veasley</u>, 610 So. 2d 290, 295 (Miss. 1992). However, "[e]xtracontractual damages, such as awards for emotional distress and attorneys' fees, are not warranted where the insurer can demonstrate an arguable, good-faith basis for denial of a claim." <u>United Servs. Auto Ass'n v. Lisanby</u>, 47 So. 3d 1172, 1178 (Miss. 2010) (citations omitted).  Moreover, the Mississippi Supreme Court has stated that,

> The plaintiff's burden in proving a claim for bad faith refusal goes beyond proving mere negligence in performing the investigation. The level of negligence in conducting the investigation must be such that a proper investigation by the insurer would easily adduce evidence showing its defenses to be without merit.

<u>Id.</u> (citations omitted).

In this case, there can be no claim for extra-contractual damages.  The Court has already determined that the Defendant did not have a duty to defend and that the Plaintiffs failed to adduce any competent evidence that Defendant failed to properly investigate the claims. As such, Defendant's Motion is granted as to Plaintiffs' claim for extra-contractual damages.

## <u>CONCLUSION</u>

For the foregoing reasons, the Defendant's Motion for Summary Judgment is GRANTED.


So ordered on this, the  29th  day of June, 2011.


**/s/   Sharion Aycock**
**UNITED STATES DISTRICT JUDGE**